E-FILED
Wednesday, 01 August, 2007 10:22:39 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JEAN A. RASMUSSEN, )<br>)<br>  Plaintiff, )<br>)<br>    v. )<br>)<br>COMMISSIONER OF SOCIAL SECURITY, )<br>)<br>  Defendant. ) | Case No. 06-cv-4021 |

## O R D E R

Before the court are the Motion for Summary Judgment filed by Plaintiff, Jean A. Rasmussen, on September 25, 2006 [Doc. 11] and the Motion for Summary Affirmance filed by Defendant, the Commissioner of Social Security, on December 8, 2006 [Doc. 14]. For the reasons that follow, Plaintiff's Motion is GRANTED IN PART and Defendant's Motion is DENIED.

### BACKGROUND

Plaintiff, Jean A. Rasmussen, applied for disability insurance benefits on October 27, 2003 alleging an onset date of October 15, 2001. Her claim was initially denied by the Commissioner and a hearing was set before Administrative Law Judge Jean M. Ingrassia for August 19, 2005. At the hearing, Plaintiff testified along with a vocational expert, Elizabeth Albrecht. ALJ Ingrassia issued an unfavorable decision on December 29, 2005. Plaintiff's further administrative appeals were unsuccessful. This lawsuit ensued.

Plaintiff ceased regular employment on October 31, 2001. She testified at the August 19, 2005 hearing that she worked as a deli clerk for Eagle Country Market for 11 ½ years and that she retired from that job at the age of 59. (R. 155, 158). She also had a paper route which she terminated on that same day.[1] (R. 155). Plaintiff states that her pension with Eagle Country Market vested after she had been employed there for 10 years. (R. 163). However, she worked beyond the 10 year period in order to receive more money upon retirement. (R. 163-164). Her intent was to retire at the age of 62. (R. 164). She retired earlier because she was having back problems related to the physical demands of her job (which included lifting 50 pounds of frozen chicken).[2] (R. 162, 164). She currently receives $480.00 in retirement benefits from Eagle County Market. (R. 157). Plaintiff also is receiving Social Security Benefits.

On October 11, 2001, Plaintiff sought treatment at Orthopaedic & Rheumatology Associates , P.C. (ORI) for back pain. No MRI was conducted at the time, however, the record indicates that "[r]adiographically, there is nothing remarkable

---

[1] Prior to her job as a deli clerk and newspaper deliverer, she worked for Hardee's Restaurant for about 2 months and for a Taco Bell Restaurant for 6 months. (R. 158).

[2] Plaintiff further testified that she was having back problems prior to her job at Eagle Country Market. (R. 166). She stated that she worked there for 10 years with back pain but that she retired because "it was just getting worse and the doctor said it would not get any better." (R. 166).

for her age" but that there was "lumbar insufficiency." (R. 123). Plaintiff was prescribed Vioxx 25. (R. 123).

On November 20, 2001, Plaintiff visited the emergency room with complaints of back pain. (R. 143). The record reflects the Plaintiff was counseled with respect to osteoporosis, tobacco abuse, and obesity. (R. 143). The record does not reveal any specific treatment for back pain. (R. 143).

Plaintiff returned to ORI on July 18, 2002, to refill her Vioxx prescription. (R. 122).

On October 30, 2003, Plaintiff presented with "increasing back pain." An x-ray was performed which revealed "L1-2 degenerative disc disease v. discitis." (R.121). On a November 14, 2003 follow-up, a report indicated that an MRI revealed discitis at the T11 and T10 level. (R. 120). The actual MRI of the lumbar spine report, however, states as an impression that the "abnormality" is at the T11-12 level and that Plaintiff had mild degenerative changes. (R. 124). An MRI of Plaintiff's thoracic spine further revealed discitis at the T11-T12 level, osteomyelitis, and "mild degenerative changes." (Tr. 125). Apparently, however, Plaintiff's symptoms were relieved by antibiotics. (R. 119). A further follow up on December 12, 2003, revealed "considerably less back pain than she had previously" and no further treatments. (R. 119).

In a February 5, 2003 letter Dr. Gerald A. Rauba, Plaintiff's treating physician, indicated as of January 25, 2001, the last date that he examined Plaintiff, she suffered from "moderate osteoarthritic changes at T4-T5," a "compression deformity of the T12 vertebral body," "advanced disc degeneration and anterior vertebral body spurring at the L1-L2 and L2-L3 levels," and "thoracic spine is also hyper kyphotic." (R. 116).  Dr. Rauba stated that while he could not provide a current diagnosis or statement of impairment, he indicated that she "very likely" "is dealing with chronic spinal discomfort and if she is not careful can easily have acute exacerbations disabling pain."  (R. 116).

In a subsequent letter, dated June 6, 2005, Dr. Rauba indicated that he last examined Plaintiff of February 3, 2003 (this date is inexplicably prior to the February 5, 2003 letter, discussed above, wherein Dr. Rauba stated that he last examined Plaintiff on January 25, 2001).  (R. 13)  Dr. Rauba indicated that Plaintiff should avoid lifting more than 15 pounds and that she should avoid any "repetitive forward bending and lifting." (R. 135).  He also stated that the  "arthritic condition in Mrs. Rasmussens [sic] spine is severe enough to result in chronic pain."  (R. 135).

On December 4, 2003, Plaintiff was examined by Dr. Patricia Dunbar at the request of the Illinois Department of Human

Services.  (R. 108-110).  Dr. Dunbar did not have the benefit of Plaintiff's medical records or any diagnosis conducted by Plaintiff's treating physician.  (R. 109).  However, upon evaluating Plaintiff, Dr. Dunbar found that Plaintiff was not in any acute distress and her senses, neck, chest, head, and abdomen appeared normal.  (R. 108).  The range of motion in Plaintiff's shoulders, wrists, hands, hips, and knees appeared normal.  (R. 108).  Upon examining her back, Dr. Dunbar found Plaintiff had "localized tenderness approximately 8 cm in diameter four finger breadths below the inferior tip of the left scapula approximating the left flank."  (R. 109).  Dr. Dunbar also found "a marked kyphosis of the thoracic spine and corresponding marked lordosis at the lumbar spine."  (R. 109). The terms relate to the normal stooping of the back and an abnormal curvature of the back, respectively.  Plaintiff was capable of walking toes to heels and to perform a full squat "with mild assistance, holding on to the countertop." (R. 109) Dr. Dunbar concluded:

> There were no abnormalities with ROM.  There was no evidence of joint abnormality, inflammation, tenderness, thickening, or deformity.  Patient's gait and ability to bear weight were completely without abnormality.  She did not need any assistive devices to ambulate.  (R. 109).

A subsequent Residual Functional Capacity Assessment was conducted by Dr. Frank B. Norbury on January 20, 2004.  The RFC,

5

stated that Plaintiff could occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk 6 hours out of an 8 hour work day; sit for 6 hours out of an 8 hour work day; but that she must alternate sitting and standing every 45 minutes to alleviate her back pain. (R. 128). The RFC also indicated some postural limitations, but no manipulative, visual communicative, or environmental limitations. (R. 129-131). The RFC concluded by listing Plaintiff's diagnoses and stating that the "medical evidence in file supports this light RFC." (R. 134).

The record does not reveal any medical records from 2004 related to Plaintiff's back pain. However, Plaintiff sought treatment from Dr. Randal Spaude in 2005. The clinic visit notes of June 6, 2005 and August 2, 2005 reflect complaints of back pain. (R. 137-138).

ALJ Ingrassia found that Plaintiff has not engaged in gainful employment since the alleged onset of her disability, that Plaintiff's conditions are severe, and that her conditions do not meet or equal the listing of impairments. (R. 15). However, the ALJ found that Plaintiff's allegations of limitations are not credible, that she has the RFC to perform light work, and that she could perform her past relevant work. (R. 16).

**LEGAL STANDARD**

To be entitled to disability insurance benefits under the Social Security Act, a claimant must prove that she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. 423(d)(1)(A). The Commissioner of Social Security engages in a factual determination in concluding whether the claimant is unable to engage in any substantial gainful activity. See McNeil v. Califano, 614 F.2d 142, 143 (7th Cir. 1980). The factual determination is made by using a five-step sequential analysis. See 20 C.F.R. §§ 404.1520; Maggard v. Apfel, 167 F.3d 376 (7th Cir. 1999).

In the first step, a threshold determination must be made to decide whether the claimant is presently involved in a substantially gainful activity. 20 C.F.R. § 416.920(b). If the claimant is not under such employment, then the Commissioner of Social Security continues to step two. Id. For the second step, the Commissioner evaluates the severity and duration of the claimant's impairment. 20 C.F.R. § 416.920(c). If the claimant has an impairment that significantly limits their physical or mental ability to do basic work activities, then the Commissioner will proceed to step three. Id. Under the third

step, the Commissioner compares the claimant's impairments to a list of impairments considered severe enough to preclude any gainful work, and if the elements on the list are met or exceeded, declares the claimant eligible for benefits. 20 C.F.R. § 416.920(d). If the claimant does not qualify under one of the listed impairments, the Commissioner proceeds to the fourth and fifth steps.

In step four, the claimant's residual functional capacity is evaluated to determine whether the claimant can pursue her past work. 20 C.F.R. 416.920(e). If the claimant cannot perform past work, then the Commissioner evaluates the claimant's ability to perform other work available in the economy. Id. The claimant has the burdens of production and persuasion on steps one through four. However, once the claimant shows an inability to perform past work, the burden shifts to the Commissioner to show an ability to engage in some other type of substantial gainful employment. See Tom v. Heckler, 779 F.2d 1250, 1253 (7th Cir. 1985); Halvorsen v. Heckler, 743 F.2d 1221, 1225 (7th Cir. 1984).

Once a case reaches a federal district court, the court's review is governed by 42 U.S.C. 405(g), which provides that the finding of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. Substantial evidence is "such evidence as a reasonable mind

8

might accept as adequate to support a conclusion." Maggard, 167 F.3d at 379 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1970)).

A court's function on review is not to try the case *de novo* or to supplant the ALJ's finding with the Court's own assessment of the evidence. See Pugh v. Bowen, 870 F.2d 1271, 1274 (7th Cir. 1989). A court must only determine whether the ALJ's findings were supported by substantial evidence and whether the proper legal standards were applied. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986).

Furthermore, in determining whether the ALJ's findings are supported by substantial evidence, credibility determinations made by the ALJ will not be disturbed unless the finding is clearly erroneous. See Imani v. Heckler, 797 F.2d 508, 510 (7th Cir. 1986).

The Court's primary job in reviewing the ALJ's decision is to ensure the ALJ articulated reasons for rejecting or accepting entire lines of evidence. Godbey v. Apfel, 238 F.3d 803, 808 (7th Cir. 2000) (ALJ's failure to adequately address evidence that was contrary to his decision merited reversal); Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994) (ALJ erred by failing to discuss evidence regarding claimant's hand dexterity problems). The ALJ is required to "sufficiently articulate his assessment of the evidence to 'assure us that the ALJ considered

important evidence . . . [and to enable] us to trace the path of the ALJ's reasoning.'" Carlson v. Shalala, 999 F.2d 180, 181 (7th Cir. 1993) (quoting Stephens v. Heckler, 766 F.2d 284, 287 (7th Cir. 1985)).

## ANALYSIS

Plaintiff makes three arguments: first, that the RFC is not supported by the record; second, that the ALJ applied the wrong standard in addressing Plaintiff's subjective complaints of pain; and, third, that the ALJ failed to include exertional limitations supported by the record when questioning the Vocational Expert.

Plaintiff argues that the ALJ improperly relied on Dr. Dunbar's functional capacity evaluation because Dr. Dunbar failed to consider Plaintiff's past treatment and records.[3] In addressing Dr. Dunbar's report, the ALJ did note that Dr. Dunbar did not have access to Plaintiff's medical records. (R. 14). The ALJ highlighted some of Dr. Dunbar's findings but found that Plaintiff was not as limited as Dr. Dunbar indicated because Dr. Dunbar's opinion was given prior to Plaintiff's discitis treatment which the ALJ describes as "very successful." Thus, the ALJ did not give Dr. Dunbar's assessment the weight that Plaintiff advocates in her brief. Rather, the ALJ gave

---

[3] Plaintiff does not challenge the RFC completed by agency doctors on January 20, 2004 which did consider Plaintiff's medical records.

controlling weight to the RFC performed by agency doctors who did consider Plaintiff's medical records. (R. 14). Therefore, even if the ALJ improperly relied on Dr. Dunbar's assessment, Plaintiff has presented no argument that the ALJ improperly relied on the agency RFC which found that Plaintiff was less limited than Dr. Dunbar's assessment.

Plaintiff next argues that the ALJ applied the wrong standard in assessing Plaintiff's subjective complaints of disabling pain. The ALJ referred to the Eighth Circuit Court of Appeals opinions in <u>Polaski v. Heckler</u>, 751 F.2d 943, 948 (8th Cir. 1984) and 20 CFR 404.1529 and 416.929 in analyzing Plaintiff's subjective allegations. There is no question here, that the controlling precedent is that of the Seventh Circuit Court of Appeals. Plaintiff argues that the Seventh Circuit employs additional factors than those cited by the Eighth Circuit.

In <u>Polaski</u>, the Eighth Circuit approved a test in evaluating subjective complaints of disabling pain. The Court held that in addition to considering the medical record, an ALJ should consider Plaintiff's "daily activities," the "duration, frequency and intensity of the pain," any "precipitating and aggravating factors," "dosage, effectiveness and side effects of medication," and "functional restrictions." <u>Id.</u> at 948 (quoting

11

Polaski v. Heckler, 739 F.2d 1320, 1321-22 (8th Cir. 1984)).[4] In this Circuit, Plaintiff's subjective complaints of disabling pain are analyzed in a similar manner. "An ALJ should consider elements such as objective medical evidence of the claimant's impairments, the daily activities, allegations of pain and other aggravating factors, 'functional limitations,' and treatment (including medication)." Prochaska v. Barnhart, 454 F.3d 731, 738 (7th Cir 2006) (citing Scheck v. Barnhart, 357 F3d 697, 703 (7th Cir. 2004)); Rice v. Barnhart, 384 F.3d 363 F.3d 363, 371 (7th Cir 2004). These standards are similar to the regulations cited by the ALJ in this case. Both 20 CFR 404.1529 (disability insurance analysis) and 20 CFR 416.929 (supplemental security income analysis) provide that the agency will consider, along with objective medical evidence:

> (i) Your daily activities;
>
> (ii) The location, duration, frequency, and intensity of your pain or other symptoms;
>
> (iii) Precipitating and aggravating factors;
>
> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>
> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

---

[4] This case has a significant procedural history that is not relevant in these proceedings and therefore not reproduced.

>  (vi) Any measures you use or have used to relieve your
>  pain or other symptoms (e.g., lying flat on your back,
>  standing for 15 to 20 minutes every hour, sleeping on
>  a board, etc.); and
>
>  (vii) Other factors concerning your functional
>  limitations and restrictions due to pain or other
>  symptoms.
>
>  20 CFR 404.1529(c)(3); 20 CFR 416.929(c)(3).

Each of these citations, from the Eighth Circuit, the Seventh Circuit and the CFR, are not identical; however, each are interchangeable and stand for the basic premise that the agency is required to consider more than the objective medical evidence in evaluating Plaintiff's subjective complaints of disabling pain.

In the case at bar, the ALJ noted that Plaintiff stated that most activities increased her pain. However, Plaintiff also stated that she was taking over-the-counter Tylenol (and not prescription medication) that relieved her pain, that she had no sleeping problems, and that she could complete most activities but at a slower pace. (R. 13). The medical evidence further revealed that Plaintiff's symptoms were not as severe as she testified. The ALJ noted that Dr. Rauba indicated that chiropractic treatment produced relief; that Dr. Gerdes noted no radiological abnormalities for her age; that her back pain resulting from discitis was relieved after finishing a course of antibiotics; and that Dr. Gerdes also noted a full range of

13

motion and no limitations of activities of daily living.  (R. 13-14).  The ALJ finally noted that Plaintiff admitted to working with her back impairment.  (R. 14).  The ALJ sufficiently considered the entire record in determining that Plaintiff's subjective statements of disability were not fully credible, consistent with the law of this Circuit.  <u>Schmidt v. Barnhart</u>, 395 F.3d 737, (7th Cir. 2005) (approving ALJ's "decision [that] notes not only the absence of objective medical evidence to support the severity of the pain to which Schmidt testified, but [that] goes on to consider that Schmidt's daily living activities were not significantly restricted, that he was not receiving any active treatment or therapy for his conditions at the time of the hearing, that he was not using any prescription medication, and that his alleged pain did not prevent him from engaging in substantial gainful activity for several months after he allegedly became disabled").

Finally, Plaintiff argues that the ALJ failed to consider the 45 minute sit/stand functional limitation in questioning the Vocational Expert with respect to Plaintiff's ability to perform her past relevant work. In her opinion, the ALJ did not mention the sit/stand alternation that was indicated in the agency RFC (which the ALJ gave controlling weight) (R. 128).  In the hypothetical addressed to the Vocational Expert, the ALJ only included the limitations of "[e]xertionally she should be able

14

to lift 20 pounds occasionally, 10 pounds frequently, sit, stand and walk with normal breaks in an eight hour day." The ALJ did not include the alternating sit/stand every 45 minutes limitation as indicated in the agency RFC. (R. 128). This limitation also was indicated at the hearing. The Plaintiff testified that she needed breaks while standing and sitting every 30 to 45 minutes.[5] (R. 167). The ALJ did not mention this testimony in her opinion.

"Hypothetical questions posed to vocational exerts ordinarily must include *all* limitations supported by medical evidence in the record." Steele bv. Barnhart, 290 F.3d 936, 942 (7th Cir. 2002) (emphasis in original). The failure to include all limitations can be fatal to a decision that a claimant can perform work. Young v. Barnhart, 362 F.3d 995, 1005 (7th Cir. agency 2004). The medical record and Plaintiff's testimony appear to support the alternation requirement reflected in the agency RFC. In her opinion, the ALJ, while giving weight to the agency RFC, failed to specifically consider the alternation requirement. Thus, there is no opinion by the ALJ in the first instance of whether the alternation requirement is supported by the record.

---

[5] This requirement also was indicated in Dr. Dunbar's assessment. (R. 110).

Even if the ALJ had addressed the alternation requirement and merely failed to include it in her hypothetical, there is no indication here that the Vocational Expert was independently aware of this limitation through a review of the RFC or medical records.  See Ragsdale v. Shalala, 53 F.3d 816 (7th Cir, 1995).  If there was such a review of the medical record, this Court could presume that the Vocational Expert was aware of all of Plaintiff's functional limitations, even if they were not specifically included in the ALJ's hypothetical.  Id. at 820.  There was no testimony that the Vocational Expert had reviewed the Plaintiff's medical records prior to the hearing.

However, the Vocational Expert was present when Plaintiff testified as to her need for frequent breaks when standing and sitting.  (R. 167).  Neither party addresses whether this is sufficient to presume that the Vocational Expert took this limitation into account when indicating that Plaintiff could perform her past relevant work.  Nor has either party argued that this alternation limitation is included in the "light" work that the ALJ believed Plaintiff could perform.  In Young, the Seventh Circuit noted that the hypothetical need not include all limitations, "provided that the vocational expert had the opportunity to learn of the applicants' limitations through, for example, an independent review of the medical records *or through other questioning at the hearing*."  Id. at 1003) (citing Steele,

16

290 F.3d at 942) (emphasis added). The Vocational Expert in this case was present when Plaintiff testified that she needed to change positions every 30 to 45 minutes in order to alleviate pain.

This Court, however, has found no Seventh Circuit opinion which states that merely being present at a hearing where a Plaintiff testifies as to his functional limitations is sufficient to presume that a vocational expert kept that testimony in mind when addressing the jobs that a plaintiff could do. See Ragsdale, 53 F.3d at 818 (approving application on the presumption where the vocational expert was present at the hearing and testified that he reviewed the claimants medical records); Herron v. Shalala, 19 F.3d 329, 337 (7th Cir 1994) (noting that the vocational expert testified that he reviewed the medical record and that he was subject to cross-examination with additional limitations by Plaintiff's attorney); Cass v. Shalala, 8 F.3d 552, 556 (7th Cir. 1993) (no error where vocational expert testified that he reviewed the entire medical record); Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534 (7th Cir. 1992) (a seminal case wherein the Seventh Circuit held that: "When the record supports the conclusion that the vocational expert considered the medical reports and documents, his responses are probative of both residual functional capacity and which jobs a claimant reasonably can

17

perform, even if the hypothetical question itself does not take into account every aspect of the claimant's impairments.").

In assessing Plaintiff's ability to work, the ALJ relied on the agency RFC (she accorded it the "weight of expert medical opinions") and relied on the testimony of the Vocational Expert. The limitations listed in the opinion, however, did not track the hypothetical posed to the Vocational Expert, nor did the ALJ include limitations addressed in the agency RFC.  Specifically, in her opinion, the ALJ found that Plaintiff "should never be expected to climb ropes, ladders, or stairs."  However, in the hypothetical, this limitation was reduced to "occasional climbing ramps, stairs, ladders, ropes and scaffolds . . ." Additionally, the agency RFC included the 45 minutes sit/stand alternation that was not included in the hypothetical.  If the ALJ found that the alternation requirement was necessary (which she presumably did by accepting the agency RFC) such a requirement should be included in the hypothetical.  This is especially true where there is no evidence that the Vocational Expert reviewed the medical record.  Moreover, if the ALJ relies on the Vocational Experts assessment, then her opinion regarding limitations should track the hypothetical given to the Vocational Expert.  In any event, there must be some explanation of why the 45 minute sti/stand altneration was ignored or inapplicable and why the ALJ deviated from the hypothetical

18

posed to the Vocational Expert.  As such, this case must be remanded to the agency for further proceedings.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Plaintiff, Jean A. Rasmussen, on September 25, 2006 [Doc. 11] is GRANTED IN PART and the Motion for Summary Affirmance filed by Defendant, the Commissioner of Social Security, on December 8, 2006 [Doc. 14] is DENIED.

Pursuant to sentence 4 of 42 U.S.C. §405(g), the Commissioner's decision is AFFIRMED IN PART and REVERSED IN PART.  The Commissioner's decision is REVERSED only with respect to the decision that Plaintiff could perform her past relevant work.  This matter is REMANDED to the Commissioner of Social Security for the limited purpose of determining whether, in light of the agency RFC's finding that Plaintiff "must alternate every 30-45 minutes to alleviate back pain," (R. 128), the agency's RFC findings with respect to postural limitations (R. 129), and the ALJ's conclusion that Plaintiff "should never be expected to climb ropes, ladders, or stairs," Plaintiff is nonetheless capable of performing her past relevant work or any other work.

Entered this  1st  day of August, 2007

> s/ Joe B. McDade
> JOE BILLY McDADE
> United States District Judge